UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61766-CIV-MARRA/HOPKINS

JAN BENSON SEGAL,

Plaintiff,

vs.

RICKEY'S RESTAURANT AND LOUNGE,
INC., a Florida corporation, d/b/a RICKEY'S
RESTAURANT,

Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Rickey's Restaurant and Lounge, Inc. d/b/a Rickey's Restaurant's ("Defendant")  Motion for Final Summary Judgment (DE 25); Plaintiff Jan Benson Segal's ("Plaintiff") Motion to Strike or in the Alternative Response Brief in Opposition to Defendant's Motion for Summary Judgment (DE 28) and Defendant's Motion to Exclude Plaintiff's Expert Report (DE 32).  The Court has carefully reviewed the motions and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:

Defendant is a restaurant located in Hollywood, Florida. (Bill Mitchell Decl. ¶ 2; DE 26-1.)  Bill Mitchell is the manager of the restaurant and is frequently present on site. (Id.)  The

restaurant has been in business for approximately 38 years.  According to Mr. Mitchell, Defendant has an ongoing policy of making sure everyone at the restaurant is accommodated and has never failed to accommodate someone who has requested assistance.  The restaurant has serviced disabled customers in the past and has never denied anyone full and equal treatment because of his or her disability.  (Id. at ¶ 3; Virginia Arlotta Decl. ¶ 3, DE 26-2.)  In fact, Defendant specifically instructs and trains its employees to assist individuals with disabilities.  Individuals with disabilities have asked for assistance from Defendant in the past, and Defendant has provided that assistance. (Mitchell Decl. ¶ 3.)  Mr. Mitchell has never seen Plaintiff at either the restaurant or at any other time, prior to Plaintiff's deposition.[1]  Mr. Mitchell states that had Plaintiff visited the restaurant and asked for assistance, Defendant would have provided assistance. (Id. at ¶ 4.)

Plaintiff is a seventy year old man. (Pl. Dep. 6.)   Plaintiff has lived in Florida for approximately 30 years, and has lived at the same address in Hollywood, Florida for the past four years. (Id. at 9-10.)   He lives there with his wife and son, who is an attorney. (Id. at 7-10.)  Plaintiff is unemployed and has not worked for the past 14-15 years. (Id. at 14.)   His only source of income is social security, which is $932 a month. (Id. at 38.)

Plaintiff has cerebral palsy. (Id. at 15.)  The condition causes him to have poor balance and affects both of his legs.  (Id. at 21-22.)  His memory is good and he has no cognitive impairments.  He is occasionally incontinent, but Plaintiff does not know if that is because of his disability. (Id. at 16-17.)  He cannot bathe himself, but he is able to dress, groom, go to the

---

[1] Plaintiff testified that he went to the restaurant in January of 2012 on a weekday. (Pl. Dep. at 92-93, DE 26-3, DE 29-4.)

bathroom and eat by himself. (Id. at 16-17.)   Plaintiff can walk short distances without his wheelchair, but only if he holds on to something. (Id. at 18-19.)  Plaintiff testified that he has somewhat less of an ability to use his hands since an operation. (Id. at 20.)

Plaintiff relies on three individuals to drive him around: his wife Sally, his son Jacob, and Jimmie Spector.  (Id. at 25-26.)  Mr. Spector drives Plaintiff to his appointments, whereas his son and wife drive him when he wants to go out for personal reasons or run errands. (Id. at 26-27.) Plaintiff's wife and son drive Plaintiff more often than Mr. Spector. (Id. at 26-27.)

Plaintiff testified that he has only visited Defendant's restaurant once and his son paid for his lunch.[2]  (Id. at 91, 103, 115.)   On the day he visited the restaurant, Plaintiff had made plans to have lunch with his son and they were going to decide where to go that day. (Id. at 94-95.) Plaintiff had not heard of Defendant's restaurant when his son recommended they go there. (Id. at 95.)  Their lunch lasted approximately 30 minutes. (Id. at 96.)

Plaintiff encountered barriers at the restaurant. (Id. at 137.)  Plaintiff testified that the handicapped parking signs are too far from the railing, too low in height and, although his son was able to park the car in an accessible parking space, the parking space was too far away.  (Id. at 97, 122, 171.)  The pavement from the parking lot to the restaurant was uneven and bumpy and while Plaintiff was able to get from the car to the restaurant using help from his son, he would have liked to have done it himself. (Id. at 122-23.)  Plaintiff did not have any problems getting

---

[2] Plaintiff has also submitted two receipts from the restaurant for the Court's consideration, one dated August 6, 2011 and the other dated April 15, 2012. (Receipts, Exs. 2 and 3, DE 29-2, 29-6.)  Neither receipt was authenticated, thus the Court cannot consider them. Saunders v. Emory Healthcare, Inc., 360 F. App'x 110, 113 (11th Cir. 2010) (holding that because exhibits were not properly authenticated, the district court was not required to consider them in opposition to defendant's motion for summary judgment.)

from the door to his table and was able to eat once things were arranged at the table. (Id. at 101, 111.)  However, the door to the restaurant was heavy,[3] the bathroom sink was too high, the bathroom stall was too narrow and the aisle between the bar and tables was also too narrow.  (Id. at 97-99, 105, 122-124.)  Plaintiff's bathroom experience lasted about five minutes. (Id. at 115.)  Plaintiff was not able to wash his hands in the bathroom. (Id. at 126.)  Plaintiff never travels without assistance. (Id. at 124-25.)

Outside of places within close proximity to his house, Plaintiff regularly patronizes the racetrack, hotels and the Hard Rock Casino. (Id. at 29-31.)  Closer to his house, Plaintiff patronizes a grocery store, bank and a barber shop.  (Id. at 31-32.)   He also goes to the doctor's office. (Id. at 84.)  Plaintiff does not, however, go out of his house often. He does not like restaurants very much and eats at restaurants about five to six times a year. (Id. at 15, 24, 32, 85-86, 91, 142.)   That being said, Plaintiff has gone to several restaurants in the past year. (Id. at 89-90.)

When asked if he would return to Defendant's restaurant, Plaintiff stated, "it depends" and that he would not "regularly patronize" the restaurant.  Plaintiff testified that he does not know when in the future he would return to the restaurant. (Id. at 118-20.)   But Plaintiff also testified that "I am going to go back. But I do plan to go back. I don't know when.  Do you know when you're going back to lunch? I don't know.  You know, I have to arrange for somebody to drive me and all that." (Id. at 121.)  Plaintiff also stated that he is hesitant to return to a restaurant that he has sued, and that while the lunch was "good." it was not "terrific."  (Id. at 102, 143.)

---

[3] Defendant claims the door is not heavy and if it was any lighter, the wind would blow it open. (Mitchell Decl. ¶ 7.)

4

Plaintiff stated that he does not know: (1) the address of the restaurant; (2) how long the restaurant has been around; (3) its normal operating hours or when it is closed; (4) whether the restaurant takes reservations; (5) the name of any of the wait staff, chefs or customers at the restaurant; (6) any entrees that are on the menu, besides the sandwich he ate; (7) whether the restaurant serves desserts, appetizers or soups; (8) any of the daily specials at the restaurant; (9) whether the restaurant accepts personal checks and (10) whether customers pay at a cashier stand or at their table. (Id. at 112-14.) Plaintiff has never spoken to or seen Mr. Mitchell. (Id. at 118, 143.)

Plaintiff does not warn businesses before he sues them and he never told Defendant that he was going to file suit. (Id. at 78, 114-15.) Plaintiff thought about the lawsuit on the car ride home from the restaurant and decided to file suit after thinking about it at home for about 30 minutes. (Id. at 135-36.) Plaintiff wanted to make sure it was the correct decision. (Id. at 137, 139.) Plaintiff files these types of lawsuits in order to benefit other individuals. (Id. at 49, 64-67, 77.) He started filing lawsuits because he thought he should do something good and help other disabled people. (Id. at 64, 67.) Within the past two years, Plaintiff has filed approximately 23 lawsuits under the ADA. (Id. at 50; CMF/ECF printout; Ex. 5, DE 26-5.)

Plaintiff has one separate retainer agreement for all his lawsuits. (Pl. Dep. 44.) Plaintiff does not have to pay anything if the case is won, but is responsible for court costs if he loses. If he is unable to pay that, it can be negotiated or his son helps him. (Id. at 43.) Plaintiff has paid court costs three times and has paid his attorneys between $500 and $1,000. (Id. at 45, 53.) Plaintiff does not plan on receiving any money from this lawsuit. (Id. at 35.) Plaintiff indicates that if this case does not get resolved, he does not intend to be reimbursed for his attorney's fees.

5

Instead, he will just use money from future lawsuits. (Id. at 51, 71.)

Mr. Mitchell states that he remedied some of the alleged problems at the restaurant, with the exception of structural changes that would involve a great deal of money because Defendant is struggling financially. (Mitchell Decl. ¶ 8.)

Defendant moves for summary judgment on the following grounds: (1) Plaintiff does not have standing to bring a suit pursuant to Title III of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.; (2) Plaintiff cannot establish a prima facie case under Title III of the ADA and (3) Plaintiff is an "improper serial plaintiff."

II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and

the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

A.  Standing

Article III grants federal courts judicial power to decide only cases and controversies. Allen v. Wright, 468 U.S. 737 (1984). The constitutionally minimum requirements for standing are (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions and (3) the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "Because

injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury." Wooden v. Board of Regents of University System of Georgia, 247 F.3d 1262, 1284 (11th Cir. 2001). With respect to ADA cases, "courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).

Here, Defendant moves for summary judgment, claiming that Plaintiff cannot fulfill these requirements. Specifically, Defendant argues that the record evidence demonstrates that Plaintiff will not be returning to the restaurant and therefore will not suffer future discrimination by Defendant. In support, Defendant states that Plaintiff does not identify himself as a patron of the restaurant, he only goes to restaurants five to six times a year, Plaintiff only visited the restaurant once prior to the lawsuit and he cannot provide a specific day when he will return to the restaurant.[4] (Mot. at 9-10.)

These facts do not warrant summary judgment as a matter of law. Significantly, Plaintiff has pointed to record evidence that raises a question of fact as to whether Plaintiff might return to the restaurant in the future. Plaintiff testified that he visited the restaurant and planned to return, but noted that it was difficult to provide an exact date, in light of the fact that he does not drive himself and would need to arrange for someone to drive him there. (Pl. Dep. 25-27, 121.) As

---

[4] Defendant states numerous times that Plaintiff testified that he would return to the restaurant "some day." In fact, it is Defendant's attorney who used this phrase during Plaintiff's deposition, not Plaintiff. (Pl. Dep. at 118-19.) In fact, at one point Defendant's attorney asked Plaintiff, "Some day?," and Plaintiff responded, "Yeah. I don't know. Maybe next week." (Pl. Dep. 119.)

8

such, a factfinder could conclude that Plaintiff has visited the restaurant before, will be returning there and may therefore suffer future discrimination.[5]

Moreover, in the context of future violations of the ADA, courts have generally focused on four factors when deciding the likelihood that a plaintiff will return to the defendant's facility and suffer a repeat injury: "(1) the proximity of the place of public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of plaintiff's plan to return and (4) the plaintiff's frequency of travel near defendant." Fox v. Morris Jupiter Assocs., No. 05-80689-CIV, 2007 WL 2819522, at * 4 (S.D. Fla. Sept. 25, 2007) (citing Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1162-63 (S.D. Cal. 2006); see also Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002) (holding that past visits to a store, actual knowledge of barriers to access at the store, and statements that a plaintiff prefers a particular store is sufficient to establish actual or imminent injury); Steger v. Franco, Inc., 228 F.3d 889, 893-95 (8th Cir. 2000) (holding that a disabled plaintiff may have standing even

---

[5] Given this record, the cases cited by Defendant do not support its argument. For example, in Shotz, the Court found that the plaintiffs did not allege they attempted to return or that they intended to return to the defendant courthouse. Shotz, 256 F.3d at 1081. Here, Plaintiff testified that he planned to return to the restaurant. (Pl. Dep. 121.) See Stevens v. Premier Cruises, Inc., 215 F.3d 1237, 1239 (11th Cir. 2000) (finding it was not futile to allow the plaintiff to amend her complaint to plead that "in the near future, she would take another cruise aboard [the] [d]efendant's ship.") Nor is the Court persuaded by Defendant's reliance on the unpublished decision Access for America, Inc. v. Associated Out-Door Clubs, Inc., 188 F. App'x 818 (11th Cir. 2006). In that case, the Eleventh Circuit stated that the plaintiff must say more than he plans to visit the defendant location "someday" to establish standing. Id. at 818. As discussed supra, Plaintiff did not use the term "someday." Furthermore, Associated Out-Door Clubs cannot be reconciled with Stevens, a published opinion. In Stevens, the Eleventh Circuit reversed the district court for finding that the plaintiff's proposed amended complaint, which stated that she wanted to use the defendant's facility in the "near future," was futile for failure to plead standing whereas in Associated Out-Door Clubs, the Eleventh Circuit held that plaintiff lacked standing because the plaintiff planned to revisit Defendant "someday." Associated Out-Door Clubs, 188 F. App'x at 818, 820.

9

though he only entered the facility on one occasion); Access Now, Inc. v. South Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001) ("[Plaintiff's] personal history of attendance and continued residence in the area support his contention that he will likely patronize the Stadium in the future.")).  The inquiry does not require a plaintiff to continue to make "futile" future attempts to enter the facility. Instead, as one court explained, "the existence of a private right of action under section 12188(a)(1) does not depend upon how many attempts a plaintiff has made to overcome a discriminatory barrier, but, rather, upon whether the barrier remains in place." Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003) (emphasis added).

Here, there is no dispute by the parties that Plaintiff lives just one mile from the restaurant. (Mot. at 12; Resp. at 10.)  This proximity to the property raises a factual question as to Plaintiff's stated desire to return and the frequency of Plaintiff's travel near the restaurant. With respect to Plaintiff's definitiveness of his intention to return, factual questions are also raised on this point.  Plaintiff testified that his ability to go to a restaurant is dependent on having someone take him, a factor that limits his ability to make definitive plans to return.  Furthermore, going out for lunch is not the type of activity requiring a great deal of forethought.  See Associated Out-Door Clubs, 188 F. App'x at 820 ("the disabled need not plan their lives in such minute detail and with such vast forethought in order to invoke the ADA's protection") (Barkett, J., dissenting); Parr v. L & L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000) (noting in the context of a fast food restaurant, that "specification as to a date and time of returning to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment.")

Next, the Court rejects Defendant's argument that Plaintiff has no standing because this

"entire lawsuit is a sham." (Mot. at 9.) Defendant bases this argument on testimony that Plaintiff only visited the restaurant in January of 2012, which is after Plaintiff filed his Complaint. Defendant is essentially arguing against Plaintiff's credibility, which the Court cannot decide on a motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions."); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1531 (11th Cir.1987) (on a summary judgment motion, the court may not weigh the credibility of the parties); Delvalle v. Sanchez, 170 F. Supp. 2d 1254, 1279 n. 27 (S.D. Fla.2001) (credibility determinations are improper for a judge to make when considering evidence on a motion for summary judgment).

Likewise, the Court rejects Defendant's contention that Plaintiff lacks standing because Plaintiff only files ADA lawsuits to benefit other individuals and that he fails to provide any pre-suit warning to a business before he files suit. The Eleventh Circuit has unequivocally stated that pre-suit notice is not required for Title III ADA claims. Association of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359-60 (11th Cir. 2006). As such, the lack of pre-suit notice affords Defendant no relief. Nor is the fact that Plaintiff files these lawsuits, in part, to benefit others relevant. Read in context, Plaintiff testified that he hoped to help other disabled individuals, as well as himself, and he wants disabled individuals, including himself, to have the same access as others. (Pl. Dep. 49, 64-65.) If anything, Plaintiff's testimony is consistent with the purpose of the ADA; namely, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities,

to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b).

Nor is the Court persuaded by Defendant's claim that Plaintiff is an improper serial plaintiff and "[s]uch a charade to try to confer standing should not be allowed in federal court." (Mot. at 11.)  The court in Kittok v. Leslie's Poolmart, Inc., 687 F. Supp. 2d 953, 959 (C.D. Cal. 2009) addressed this very argument by observing:

> The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs any more than it shows a hesitation of businesses to comply with the law. . . [ ] For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.

Id. at 959 (quoting Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007)) (internal quotation marks omitted); Campbell v. Moon Palace, Inc., No. 11–60274–CIV, 2011 WL 3648562, at * 5 (S.D. Fla. Aug. 19, 2011) (same).  Plaintiff is not stripped of standing by virtue of the number of lawsuits he has filed.[6]  Campbell, 2011 WL 3648562, at * 5.

For the foregoing reasons, the Court denies Defendant's motion for summary judgment

---

[6] The Court is not persuaded by Defendant's assertion that Plaintiff, by filing multiple lawsuits, is "pervert[ing]" the ADA and is a "pawn" for the generation of attorney's fees. (Mot. at 17-19.)  Instead, the Court notes that filing suit to remedy architectural barriers constitutes a "legal recourse to redress [ ]discrimination" and allows the disabled to "fully participate in all aspects of society" 42 U.S.C. § 12101(a)(1) and (4).   Furthermore, the ADA authorizes a court, in its discretion, to "allow the prevailing party, other than the United States, a *reasonable* attorney's fee . . ." 42 U.S.C. § 12205 (emphasis added).  Should Plaintiff prevail, Defendant is not prevented from arguing that Plaintiff should not recover attorney's fees.

on the basis of lack of standing.

### B. Prima Facie case

A plaintiff alleging Title III ADA discrimination must initially prove that (1) he is a disabled individual; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA. 42 U.S.C. § 12182(a). To meet the burden of proof in discrimination cases focused on pre-existing buildings, a plaintiff must present evidence of a barrier, the removal of which is "readily achievable."[7] Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273 (11th Cir. 2006); see Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001) (discrimination includes "a private entity's failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable.") (internal quotation marks omitted); see also 42 U.S.C. § 12181(9) ("'[R]eadily achievable' means easily accomplishable and able to be carried out without much difficulty or expense."). If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." Gathright–Dietrich, 452 F.3d at 1273.

The Court begins by noting that Defendant does not challenge the first and second elements of prima facie case; namely, that Plaintiff is disabled and the restaurant is a place of public accommodation. Hence, the Court will address whether Defendant has shown, as a matter of law, that it did not discriminate against Plaintiff within the meaning of the ADA. Defendant

---

[7] Defendant states that the prima facie case also requires a plaintiff to show that an architectural barrier is a barrier to the plaintiff's actual access and the barrier actually barred the plaintiff's access. (Mot. at 13.) In support, Defendant relies on Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001), a pre-Gathright district court opinion. The Court will instead follow the prima facie case set forth in Gathright.

contends that Plaintiff has alleged eight architectural barriers,[8] but these barriers did not personally affect him because: (1) his son was able to park to car; (2) Plaintiff never travels alone, making the uneven ground and heavy doors into the restaurant and bathroom a non-barrier and (3) Plaintiff admitted that the width of the aisle did not constitute a barrier to his access. (Mot. at 14.)   Notably, Defendant does not address Plaintiff's complaint that the bathroom sink was too high and the bathroom stalls were too narrow.  A fact finder could find that these alleged barriers resulted in discrimination.[9]  With respect to Defendant's justifications for the remaining alleged architectural barriers, the Court finds that a reasonable fact finder could conclude that architectural barriers that can only be overcome by the disabled person with the assistance of an able-bodied individual constitutes discrimination under the ADA. See National Federation of the Blind v. Target Corp., 582 F. Supp. 2d 1185, 1195 (N.D. Cal. 2007) ("A wheelchair user is not prohibited from entering a store without a ramp: that person could be carried into the store by the store personnel or hire a guide to do so. Nevertheless, those accessibility barriers, even where they may be accommodated, would generally violate the ADA.")  Thus, Defendant has not

---

[8] Defendant identifies the following: the distance between the handicapped parking signs from the railing, the height of the handicapped parking signs, the uneven pavement from the parking space to the entrance of the restaurant, the heavy doors to the entrance of the restaurant and to the bathroom, the width of the bathroom stall, the height of the bathroom sink and the narrow space between the bar and the tables. (Mot. at 13-14.)

[9] Defendant's claim that there were no barriers for Plaintiff in the bathroom because Plaintiff testified that it was not "urgent" for him to go to the bathroom not worthy of discussion by the Court. (Mot. at 16.)  The Court will therefore only note that Defendant's comment perpetuates attitudes the ADA is designed to combat.  See 42 U.S.C. § 12101(a)(6) ("census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally.")

shown, as a matter of law, that Plaintiff did not suffer discrimination.

Next, the Court will address Defendant's contention that the restaurant does not have architectural barriers in violation of the ADA because certain alleged barriers have been remedied, and any remaining barriers are too expensive to remedy.  In determining whether the removal of a barrier is "readily achievable," the ADA requires the following factors be considered:  (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. Gathright-Dietrich, 452 F.3d at 1273 (citing  42 U.S.C. § 12181(9)). Defendant has not provided record evidence to address each of these factors. Instead, Defendant merely points to Mr. Mitchell's declaration which states that Defendant raised the height of handicapped parking sign and widened the aisle between the bar and the tables.  With respect to the other alleged barriers, Mr. Mitchell averred that those changes would involve more money than Defendant could afford. (Mitchell Decl. ¶ 8.)   For that reason, the Court cannot find, as a matter of law, that modifications are not readily achievable.[10]

---

[10] The Court rejects Defendant's argument that the case is moot. (Mot. at 19-21.)

C. Motions to Strike

Defendant's motion to exclude Plaintiff's expert report is denied without prejudice. The Court did not rely on the expert report in resolving the summary judgment motion. Should this case proceed to trial, Defendant may renew this motion.

Plaintiff moves to strike Defendant's summary judgment motion for a violation of the rules on page limits. Plaintiff states that Defendant improperly inserted arguments in its statement of facts, thereby essentially extending the number of pages for legal arguments outside of its memorandum document. The Court agrees with Plaintiff that Defendant improperly made legal argument in its statement of facts. Therefore, the Court will only consider legal arguments raised in the memorandum. The Court will not, however, strike Defendant's entire motion on this basis.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Final Summary Judgment (DE 25) is **DENIED**.

2) Plaintiff's Motion to Strike (DE 28) is **GRANTED IN PART AND DENIED IN PART.**

3) Defendant's Motion to Exclude Plaintiff's Expert Report (DE 32) is **DENIED WITHOUT PREJUDICE.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of June, 2012.

_____
KENNETH A. MARRA
United States District Judge